IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | ) | Civil No. 10-176 Erie |
|---|---|---|
| | ) | Criminal No. 08-05 Erie |
| | ) | Judge Sean J. McLaughlin |
| v. | ) | |
| FRANCIS R. CONTI, | ) | |

**MEMORANDUM OPINION AND ORDER**

McLAUGHLIN, SEAN J., J.

This matter is before the Court upon Defendant Francis R. Conti's Motion to Vacate Judgment pursuant to 28 U.S.C. § 2255. In his motion, Conti alleges that his conviction and sentence should be vacated based on the United States Supreme Court's decision in <u>United States v. Skilling</u>, __ U.S. __, 130 S.Ct. 2896 (2010). For the reasons which follow, the motion will be dismissed.

**I. BACKGROUND**

On February 12, 2008, Conti was indicted by a grand jury on charges of participating in a mail, wire and bank fraud conspiracy between January 2003 and March 2006, in violation of 18 U.S.C. § 371.[1] Conti was also charged with nine substantive counts of mail fraud in violation of 18 U.S.C. § 1341.[2]

---

[1]  In relevant part, 18 U.S.C. § 371 provides:
> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

[2]  In relevant part, 18 U.S.C. § 1341 provides:
> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by

1

In brief, Conti and his co-conspirators were accused of purchasing distressed homes in the city of Erie, performing superficial repairs and sham restorations to make the homes appear to be in significantly better shape than they were, and then selling the homes at drastically inflated prices to unsuspecting buyers. The indictment further alleged that the conspirators prepared loan applications on behalf of their buyers that overstated the financial health and assets of those buyers in order to secure mortgage loans. The indictment sets forth the following overt acts which Conti committed in furtherance of the conspiracy:

> 20. In and around November 2003, the defendant, FRANCIS R. CONTI, completed a mortgage loan application for T.Z. who was purchasing the property at 343 East 33rd Street, Erie, Pennsylvania. The defendant, FRANCIS R. CONTI, then submitted the loan application to Meritage Mortgage, in Lake Oswego, Oregen. The defendant, FRANCIS R. CONTI, indicated within T.Z.'s loan application that T.Z. maintained a checking account balance of $8,700, when the actual balance when the application was submitted was approximately $120.66.
>
> \* \* \* \* \* \*
>
> 23. On or about January 30, 2004, the defendant, FRANCIS R. CONTI, completed a mortgage loan application for C.A. who was purchasing the property at 1550 West 25th Street, Erie, Pennsylvania. The defendant, FRANCIS R. CONTI, then submitted the loan application to Principal Residential Mortgage, Inc. in Cincinnati, Ohio. Within the loan application, the defendant, FRANCIS R. CONTI, indicated that the down payment C.A. was providing was not borrowed when, in fact, the defendant, FRANCIS R. CONTI, knew that C.A. had borrowed the money for the down payment from the defendant, GREGORY M. FINNEY.
>
> \* \* \* \* \* \*
>
> 29. On or about September 27, 2004, the defendant, FRANCIS R. CONTI, accompanied by another unnamed co-conspirator, visited the St. Martin Center, 1701 Parade Street, Erie, Pennsylvania, an organization dedicated to assisting low income individuals, in furtherance of the defendant, FRANCIS R. CONTI's, effort to find and recruit potential home buyers.

---

> means of false or fraudulent pretenses, representations, or promises . . . places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service . . . shall be fined under this title or imprisoned not more than 20 years, or both.

2

(See Indictment, pp. 6-9).

On March 13, 2009, Conti entered a plea of guilt to the conspiracy charge (Count One) and to one of the substantive mail fraud charges (Count Three) pursuant to a written plea agreement. At the plea hearing, the Assistant United States Attorney summarized the nature of the scheme and Conti's involvement in it as follows:

> [I]n general terms, this conspiracy really was about two different things. The first thing was the purchase of homes in relatively distressed areas of the city of Erie. Those home [sic] were then essentially flipped at dramatically increased values, which were not commensurate with their actual value. That was essentially accomplished by telling the borrowers, the home purchasers, that items had been improved or fixed up on these homes, which were not actually fixed up. And all that was actually done was some minor cosmetic changes made to the homes, many of which were actually falling apart, to look like that they were homes that were much nicer. Such that a borrower would want to take out a mortgage to purchase those homes. So what ended up happening with almost all of these properties where the values of the homes were dramatically increased in ways that were not – in that they did not reflect the home's true value.
> The second part of the conspiracy was that those people who purchased those homes, their ability to get a mortgage was increased by the drafting of fraudulent mortgage loan applications, which did not reflect their true assets in any reasonable fashion. Oftentimes in this case what amounted to happening was the borrower's bank account balance and other assets were dramatically inflated to make it appear to the lending institution that they had assets which they did not have.
> This second part of the conspiracy is really the part that involves Mr. Conti. And Mr. Conti did not have – had little to no involvement at all in the actual purchase and the flipping of the homes. His involvement was much more on the other end, the completion of fraudulent mortgage loan applications.

Change of Plea Hearing Transcript, March 13, 2009, pp. 17-18.

In his plea agreement, Conti "waive[d] the right to take a direct appeal from his conviction or sentence" and "waive[d] the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence." (Plea Agreement, p. 3). The agreement also contained a paragraph wherein Conti averred that he had read and discussed the plea agreement with his attorney. (Id. at p. 5).

During the plea hearing, an extensive plea colloquy took place wherein Conti admitted his

3

guilt relative to the mail fraud violations and conspiracy charges contained in Counts One and Three of the indictment. (Plea Transcript, pp. 2-12). Conti indicated several times during the hearing that he had read and understood the terms and conditions of his plea agreement and that he agreed with all of the terms therein. (Id. at 13-15). The Court specifically examined Conti concerning the waiver provisions contained in the plea agreement:

> The Court: Do you also understand, just to drive home the point because it's important – do you understand that by virtue of the terms of the plea agreement insofar as it relates to your right to appeal, that you have essentially given up your right to either perfect a direct appeal or in any way collaterally attack this sentence; do you understand that?
>
> Defendant: I do.
>
> The Court: Do you understand that as a practical matter I can tell you with assurance that your sentence will not exceed any statutory maximum. It is most unlikely that your sentence would unreasonably exceed an applicable advisory guideline range. And whether the government would choose to appeal or not is unknown. But I want to impress upon you again that you understand that for all intents and purposes you've given up your appellate and habeas corpus rights; do you understand that?
>
> Defendant: I do.

(Id. at 14-15).

On June 25, 2009, Conti was sentenced to 33 months incarceration and four years of supervised release. Conti was also ordered to pay $46,183.91 in restitution. Conti did not file a direct appeal.

On July 19, 2010, Conti filed the instant motion to vacate judgment. The government filed a response in opposition on August 18, 2010. This matter is ripe for review.

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such

4

sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. When a motion is made under 28 U.S.C. § 2255, the question of whether to order a hearing is committed to the sound discretion of the district court. In exercising that discretion, the court must accept the truth of the petitioner's factual allegations unless they are clearly frivolous on the basis of the existing record. United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992). Further, the court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the petitioner is not entitled to relief. Id. Upon consideration of Conti's motion for relief, the government's response thereto, and the pleadings and documents of record, I conclude that no hearing is necessary because Conti has waived his right to file a collateral attack of his sentence.

### III. DISCUSSION

It is well-settled that an appellate and habeas corpus waiver provision in a plea agreement must be enforced, if entered into voluntarily and knowingly, unless to do so would work "a miscarriage of justice." United States v. Khattak, 273 F.3d 557, 558 (3rd Cir. 2001). In determining whether a miscarriage of justice would occur if an otherwise valid waiver were enforced, the Third Circuit has suggested the following flexible factors for consideration:

> [T]he clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

Khattak, 273 F.3d at 563 (quoting United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)).

Fundamentally, Conti argues that, based upon the United States Supreme Court's decision in United States v. Skilling, the enforcement of the waiver provision in his plea agreement would work a miscarriage of justice. In Skilling, the United States Supreme Court addressed the scope of 18 U.S.C. § 1346[3] in the context of a defendant who was accused of conspiring to defraud

---

[3] 18 U.S.C. § 1341 provides:
For the purposes of this chapter, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.

5

shareholders by misrepresenting his employer's financial health in order to artificially inflate the company's stock price. In response to Skilling's argument that 18 U.S.C. § 1346 was unconstitutionally vague because it did not adequately define the phrase "intangible right of honest services," the Court reviewed the historical development of the doctrine and concluded that the "'vast majority' of the honest-services cases involved offenders who, in violation of a fiduciary duty, participated in bribery or kickback schemes." Id. at 2930. Rather than strike down the statute entirely, the Court held that the statute could be "salvaged by confining its scope . . . [to] encompass only bribery and kickback schemes." Skilling, 130 S.Ct. at 2926, 2930. The Court concluded that Skilling's financial self-dealing did not constitute honest-services fraud because it did not entail a bribery or a kickback. Id. at 2934. In the course of the opinion, the Court also contrasted the difference between conventional fraud and "honest services" fraud as follows:

> Unlike fraud in which the victim's loss of money or property supplied the defendant's gain, with one the mirror image of the other, the honest-services theory targeted corruption that lacked similar symmetry. While the offender profited, the betrayed party suffered no deprivation of money or property; instead, a third party, who had not been deceived, provided the enrichment. For example, if a city mayor (the offender) accepted a bribe from a third party in exchange for awarding that party a city contract, yet the contract terms were the same as any that could have been negotiated at arm's length, the city (the betrayed party) would suffer no tangible loss. Even if the scheme occasioned a money or property gain for the betrayed party, courts reasoned, actionable harm lay in the denial of that party's right to the offender's "honest services."

Skilling, 130 S.Ct. at 2926.

Here, Conti contends that since he received no kickbacks or bribes, his conviction, like that of Skilling's, should be vacated. Specifically, Conti argues:

> Mr. Trabold conceded that Conti had little to no involvement in the initial purchase of the properties in distressed areas of the City or the flipping of the same. Rather his involvement in the scheme concerned his preparation and submission of erroneous mortgage loan applications on behalf of buyers/borrowers sent to him; and, then submitted such applications to various lenders for their consideration securing loans for various individuals noted in the indictment in this matter. At such time, Conti performed such activities while in the employ of an entity known as Regal Financial Services which processed and secured mortgage loans for buyers/borrowers from various lenders. The essence of the actions, errors or omissions charged against Conti was that the submission of less than truthfully [sic] mortgage loan applications was in fact a failure of honest

6

> services to be rendered by Conti to his employer; the buyer/borrowers for whom he prepared the mortgage loan applications; and, the lenders to who he submitted the same for their consideration all of whom he had in essence a fiduciary relationship with. There was however no indication in the guilty plea colloquy that Conti, who was acting in such a fiduciary capacity in the preparation and submission of the subject mortgage loan applications, ever received any kickbacks or bribes for the actions he performed. Therefore, it is submitted that the decision rendered in Skilling is applicable to the Conti case and warrants the vacating of his conviction and judgment of sentence.

See Defendant's Brief in Support, pp. 15-16. Skilling, however, has no application here. Although Conti might wish it were otherwise, he was not charged with, nor did he plead guilty to, honest services fraud under 18 U.S.C. § 1346.[4] The indictment, which enumerated those overt acts attributable to Conti, as well as the Assistant U.S. Attorney's description of the nature of Conti's involvement in the conspiracy make it clear that Conti's conduct represented conventional "mirror image mail fraud." He falsified mortgage application papers and thereby fraudulently induced lending institutions to lend money that they would not otherwise have lent. This is precisely the type of fraud where "the victim's loss of money or property supplied the defendant's gain." Skilling, 130 S.Ct. at 2926.

Several courts have already concluded that Skilling does not apply to charges of traditional fraud pursuant to the mail and wire fraud statutes. In United States v. Saladino, for example, defendants argued that the Skilling decision provided a basis for the court to overturn an indictment charging them with mail fraud in violation of 18 U.S.C. § 371. Saladino, 2010 WL 3221427, *4 (D. Or. 2010). The court disagreed, ruling that "the Supreme Court in Skilling limited its holding to the scope of § 1346 . . . [and] did not suggest its interpretation of § 1346 had broader application to other

---

[4] Conti, citing United States v. Pennington, 168 F.3d 1060 (8th Cir. 1999), argues that the indictment's failure to reference 18 U.S.C. § 1346 "is of no significance." (Defendant's Brief in Support, Dkt. 82, p. 14). In Pennington, the Eighth Circuit held that an indictment which clearly alleged actions constituting honest services fraud but failed to include a citation to 18 U.S.C. § 1346 was nevertheless legally sufficient to apprise the accused of the nature of the charges against him. Id. at 1065. Pennington, however, is inapposite. Pennington involved the question of whether the defendant, by virtue of the language of the indictment, had received adequate notice of the nature of the charges. Here, notice is not an issue. Conti was both charged with and pled guilty to violating 18 U.S.C. § 1341.

7

statutes." Id. at *4. Similarly, in United States v. Harkonen, the court addressed a defendant's motion for leave to file a brief regarding the impact of Skilling on his indictment for wire fraud in violation of 18 U.S.C. § 1343. Harkonen, 2010 WL 2985257, *16 n. 5 (N.D. Cal. 2010). Rejecting the motion, the court held:

> Skilling involved a defendant's challenge to the "honest services" provision of the wire fraud statute, which provides that one type of a "scheme or artifice to defraud" punishable as wire fraud is "a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. In Skilling, the Supreme Court narrowed the reach of the "honest services" provision to "encompass only bribery and kickback schemes" in order to avoid construing the statute in a manner that would give rise to fair notice and vagueness challenges. Skilling, 130 S.Ct. at 30.
>
> While Skilling addresses the issue of fair notice in a general manner, the decision has absolutely no bearing on Harkonen's case. Harkonen was charged with and convicted of violating 18 U.S.C. section 1343, the wire fraud statute. As discussed above, Harkonen was on notice that if he sent a misrepresentation using the wires as part of a scheme to defraud, he could be prosecuted under section 1343. The "honest services" provision, narrowed by the Supreme Court in Skilling, played no role in this prosecution.

Id. at *16, n. 5.

Here, as in Harkenon and Saladino, the "honest services" provision of the mail fraud statute addressed by the Supreme Court in Skilling "played no role" in Conti's indictment and guilty plea. Given Skilling's inapplicability, Conti has failed to demonstrate a "miscarriage of justice." Consequently, I find that the collateral attack waiver in his plea agreement is enforceable and Conti has waived his right to file the instant motion.

### IV. CONCLUSION

For the reasons stated herein, Conti's Motion to Vacate Judgment pursuant to 28 U.S.C. § 2255 is dismissed. An appropriate order follows.

8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Civil No. 10-176 Erie |
| ) | Criminal No. 08-05 Erie |
| ) | Judge Sean J. McLaughlin |
| v. ) | |
| ) | |
| FRANCIS R. CONTI, ) | |
| ) | |

**ORDER**

AND NOW, this 5th day of November, 2010, for the reasons set forth above, it is hereby ORDERED that Petitioner's Motion to Vacate Judgment pursuant to 28 U.S.C. § 2255 is DENIED.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 2253(c), Petitioner has not made a substantial showing of the denial of a constitutional right and is not entitled to a certificate of appealability.

/s/ - Sean J. McLaughlin
United States District Judge

cm: All parties of record.